# STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

*In re* **M.K. and G.C.**

**No. 19-0323** (Harrison County 18-JA-43-3 and 18-JA-44-3)

**FILED**

**September 13, 2019**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Mother M.W., by counsel Jenna L. Robey, appeals the Circuit Court of Harrison County's March 8, 2019, order terminating her parental and custodial rights to M.K. and G.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem, Allison S. McClure, filed a response on behalf of the children in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in denying her request for a post-dispositional improvement period and in terminating her parental rights.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In May of 2018, the DHHR filed an abuse and neglect petition that alleged that in August of 2017, petitioner, then three or four months pregnant with G.C., was selling and, in the presence of M.K., abusing drugs. The petition further alleged that petitioner "bounces back and forth[] between her mother's and father's home[s]," and that petitioner's mother's home was really just "an out building with no modern conveniences." The petition contained an additional allegation that, in April of 2018, petitioner gave birth to G.C. and tested positive for Subutex and benzodiazepines upon admission to the hospital. According to the DHHR, petitioner "reported an extensive substance use/abuse history" that included "using heroin, methadone, and purchasing/using Subutex off the street." Further, petitioner provided two valid prescriptions for

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990).

1

Subutex and Xanax, but, despite the fact that the prescriptions were for ninety pills and had been filled three weeks prior, petitioner had no more pills remaining. The petition went on to allege that, on May 18, 2018, law enforcement contacted the DHHR and informed them that they detained petitioner and the father in a parking lot due to possession of drug paraphernalia. The children were in the parents' car at the time. When Child Protective Services ("CPS") arrived, law enforcement had removed "six . . . needles, lighters, a knife, and a tourniquet" from the vehicle. According to the police, the tourniquet was found in the infant's diaper bag. Law enforcement also found a prescription bottle for buprenorphine, which petitioner was prescribed, but the bottle additionally contained Xanax and alprazolam. According to the CPS worker, C.G. had two cigarette burns on his head, sores and redness in his diaper area, and "stool . . . crusted to his skin." Because the child's diaper was "soiled and full of urine," the child's clothes had to be thrown away. As a result of this incident, petitioner was arrested for child neglect creating risk of injury.[2] Based on these conditions, the DHHR alleged that petitioner abused and neglected the children.

In July of 2018, petitioner stipulated to abusing and neglecting the children due to her history of substance abuse and "subject[ing] the children to a drug endangered environment due to her addiction" and association with the father. In the adjudicatory order, the circuit court indicated that petitioner agreed to several terms and conditions, including the following: a psychological evaluation; a drug and alcohol assessment; counseling, as recommended by the evaluations; random drug screens; individual therapy; parenting classes; and obtaining and maintaining employment and a suitable residence. Thereafter, the circuit court granted petitioner a post-adjudicatory improvement period.

In December of 2018, the circuit court held a hearing on the DHHR's motion to revoke petitioner's improvement period. According to the order granting the motion, petitioner missed four drug screens during her improvement period and only submitted to one screen. That lone screen was positive for amphetamine and methamphetamine, in addition to the fact that the "urine sample was also dilute[d]." Further, the circuit court previously ordered, as a result of her noncompliance, that petitioner "drug screen every business day" beginning on October 4, 2018. Subsequent to this order, petitioner was incarcerated on December 1, 2018.[3] Between October 4, 2018, and December 1, 2018, petitioner only reported for five drug screens, all of which were positive for a variety of drugs, including amphetamine, methamphetamine, buprenorphine, lorazepam, and oxazepam. According to the circuit court, petitioner did not have a valid prescription for any of the substances for which she tested positive. The circuit court further found that petitioner was minimally compliant with her other services, having missed several supervised visits with the children and other scheduled educational classes. Further, petitioner's service provider indicated that petitioner had no contact with her after October 17, 2018. The provider also stated that, based upon the services she participated in, petitioner "did not progress well . . . because of a negative and hostile disposition and inability to take responsibility for the actions that led to the filing of the case." In addition, the service provider testified that petitioner did not acknowledge

---

[2]The petition also alleges that petitioner was charged with transferring/receiving stolen property, but does not provide a factual basis for this charge.

[3]Due to her failure to appear for a hearing in her related criminal matter, a capias warrant was issued for petitioner and she was incarcerated on this date.

her substance abuse problem and denied using methamphetamine, despite her positive drug screen results. The circuit court also found that petitioner told another DHHR employee that she "was a good mom" and "had done nothing wrong." Due to petitioner's noncompliance, her services were terminated. Evidence further indicated that petitioner never appeared for her scheduled psychological evaluation or drug and alcohol assessment. Based on this evidence, the circuit court terminated petitioner's improvement period and set the matter for disposition.

In February of 2019, the circuit court held a dispositional hearing, prior to which petitioner filed a motion for a post-dispositional improvement period. According to the circuit court's order, after petitioner was placed on home incarceration on December 6, 2018, she "cut off her bracelet after approximately twenty . . . days" and "went and got high." On January 3, 2019, petitioner tested positive for amphetamine, methamphetamine, and morphine, among other drugs, before she was again incarcerated the following day. After her release on January 11, 2019, petitioner attended a short-term detoxification program but missed seven drug screens. She then enrolled in an outpatient treatment program, although she failed to attend meetings to help with her substance abuse as recommended. Petitioner additionally admitted to using methamphetamine shortly before her enrollment in the outpatient program and admitted to using benzodiazepines during the program. The circuit court also found that petitioner's drug screen taken on the day of the dispositional hearing "was positive . . . for benzodiazepines and buprenorphine" and also included "a faint line for amphetamine and methamphetamine." According to petitioner, she attempted to enroll in long-term rehabilitation, but the circuit court found that she failed to provide any proof of these attempts.

Further evidence established that petitioner still had not submitted to either her psychological evaluation or her drug and alcohol assessment, and that the DHHR was "not sure if [she] ha[d] a residence." The circuit court also found that petitioner continued to deny responsibility for the conditions of abuse and neglect, as evidenced by her testimony that there were "apparently" needles in the car on the night of her arrest, when, "[i]n actuality[,] there were needles, tourniquets, and a cap with residue." Because petitioner "repeatedly failed to follow through with services and treatment," in addition to the fact that she tested positive on a drug screen on the day of the hearing, the circuit court found that there was no reasonable likelihood petitioner could substantially remedy the conditions of abuse and neglect and that termination of her parental and custodial rights was necessary for the children's welfare. Accordingly, the circuit court denied petitioner's request for a post-dispositional improvement period and terminated her parental and custodial rights.[4] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such

---

[4]G.C.'s father's parental rights were also terminated below, while M.K.'s father is deceased. According to respondents, the permanency plan is for the children to be adopted in their current foster home.

child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). On appeal, we find no error in the proceedings below.

First, petitioner argues that she was entitled to a post-dispositional improvement period because she enrolled in outpatient substance abuse treatment. According to petitioner, her acknowledgement of her substance abuse problem and her submission to treatment constituted a change in circumstances such that she was likely to comply with a post-dispositional improvement period. We do not agree.

The decision to grant or deny an improvement period rests in the sound discretion of the circuit court. *See In re M.M.*, 236 W. Va. 108, 115, 778 S.E.2d 338, 345 (2015) ("West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period."); syl. pt. 6, in part, *In re Katie S.*, 198 W. Va. 79, 479 S.E.2d 589 (1996) ("It is within the court's discretion to grant an improvement period within the applicable statutory requirements . . . ."). Here, petitioner did not meet the statutory requirements to be granted a post-dispositional improvement period. West Virginia Code § 49-4-610(3)(D) provides that a circuit court may only grant an additional improvement period following the expiration of the initial unsuccessful period if "the [parent] has experienced a substantial change in circumstances. Further, the [parent] shall demonstrate that due to that change in circumstances, the [parent] is likely to fully participate in the improvement period." While it is true that petitioner enrolled in a substance abuse treatment program, the record shows that this does not constitute a substantial change in circumstances, especially given petitioner's continued substance abuse. As noted above, petitioner admitted that she used methamphetamine one or two days prior to enrolling in the program and continued to abuse substances during her participation in that program. Moreover, petitioner's drug screen taken on the day of the dispositional hearing was positive for several substances. As such, petitioner failed to establish a substantial change in circumstances.

Further, petitioner failed to establish that she was likely to fully participate in a post-dispositional improvement period. *See In re: Charity H.*, 215 W. Va. 208, 215, 599 S.E.2d 631, 638 (2004) (A parent's "entitlement to an improvement period is conditioned upon the ability of the parent/respondent to demonstrate 'by clear and convincing evidence, that the respondent is likely to fully participate in the improvement period'"). Petitioner had approximately six months to enroll in substance abuse treatment, yet waited until the week of the dispositional hearing to enroll in an outpatient program. Moreover, substance abuse treatment was only one of several terms and conditions imposed as part of her post-adjudicatory improvement period, and the record shows that petitioner failed to comply with most, if not all, of those terms and conditions. As noted above, petitioner failed to submit to either a psychological evaluation or a drug and alcohol

4

assessment, despite both of those being scheduled for her on multiple occasions. Further, petitioner's extended noncompliance with her services resulted in the provider terminating them. Additionally, the record also shows that, at the time of the dispositional hearing, petitioner was unemployed and had not obtained suitable housing for the children. Given petitioner's overall failure to comply with her post-adjudicatory improvement period, it is clear that petitioner's late enrollment in substance abuse treatment was insufficient to establish that she was likely to fully participate in a post-dispositional improvement period.

Finally, petitioner argues that the circuit court erred in terminating her parental and custodial rights, as opposed to imposing a less-restrictive dispositional alternative. Specifically, petitioner calls into question the appropriateness of the circuit court's findings that there was no reasonable likelihood the conditions of abuse and neglect could be substantially corrected and that termination was necessary for the children's welfare. Upon our review, however, we find that these findings were based on substantial evidence and were not in error.

Many of the same facts the circuit court relied upon in denying petitioner's motion for a post-dispositional improvement period also support the findings at issue in this assignment of error. Specifically, petitioner's failure to fully comply with the terms and conditions of her post-adjudicatory improvement period show that there was no reasonable likelihood she could substantially correct the conditions of abuse and neglect. Pursuant to West Virginia Code § 49-4-604(c)(3), "no reasonable likelihood that conditions of neglect or abuse can be substantially corrected" exists when the parent has

> not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child, as evidenced by the continuation or insubstantial diminution of conditions which threatened the health, welfare, or life of the child.

As set forth above, petitioner failed to comply with the terms and conditions of her post-adjudicatory improvement period such that services were terminated. Aside from her enrollment in outpatient substance abuse treatment, during which she continued to test positive for drugs, petitioner's compliance remained unchanged from the termination of her post-adjudicatory improvement through disposition. Simply put, petitioner failed to follow through with the rehabilitative efforts designed to remedy the abuse and neglect issues that necessitated the petition's filing. In addition, the circuit court also found that petitioner's ongoing substance abuse and inability to properly parent the child necessitated the termination of her parental and custodial rights, especially in light of the fact that "the children are children of tender years." According to West Virginia Code § 49-4-604(b)(6), circuit courts may terminate parental rights upon these findings. Moreover, this Court has previously held that

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(c)] . . . that conditions of neglect or abuse can be

5

substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the termination of petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its March 8, 2019, order is hereby affirmed.

Affirmed.

**ISSUED**:  September 13, 2019


**CONCURRED IN BY**:

Chief Justice Elizabeth D. Walker
Justice Margaret L. Workman
Justice Tim Armstead
Justice Evan H. Jenkins
Justice John A. Hutchison